570 A.2d 122

**James E. MARTIN, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 1989.

Decided Feb. 8, 1990.

298

Robyn J. Katzman, with her, Eugene E. Dice, Harrisburg, for petitioner.

Kirk Junker, with him, Zelda Curtiss, Pittsburgh, for respondent.

Before DOYLE and PALLADINO, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

James E. Martin (Petitioner) appeals from an order of the Environmental Hearing Board (EHB) which dismissed in part and sustained in part his appeal from the Commonwealth of Pennsylvania, Department of Environmental Resources' (DER) bond forfeiture action. EHB sustained Petitioner's appeal as to five bonds, but dismissed his appeal with respect to eighteen others. We affirm.

The EHB held that DER properly forfeited assorted bonds posted by Petitioner for three mining sites in Armstrong County, Pennsylvania. The sites are identified as follows:

Boarts Site—Mining Drainage permit No. 3578B (MDP-16).

Karcher Site—Mining Drainage permit No. 3574 (MDP-12).

Valray Site—Mining Drainage permit No. 2869BSM25 (MDP-25).

Briefly, the following are the pertinent facts. Petitioner engaged in surface mining operations at all three sites and although the exact number is not clear from the record in total there were approximately twenty-three different mining permits and their respective bonds involved. All of the bonds were conditioned upon compliance with the terms of the Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.31 (SMCRA).[1]

The bonds that are the specific subject of this appeal were forfeited due to the failure of the Petitioner to carry out reclamation as required by SMCRA. Petitioner was

---

1. A *brief* review of the history of surface mining legislation in Pennsylvania will be helpful to understanding the issues before us. The bond form used by DER refers to SMCRA as "Act 418" which is a short name for the Bituminous Coal Open Pit Mining Conservation Act (Open Pit Mining Act), Act of May 31, 1945, P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.31. Two years after this legislation was enacted the legislature passed the Anthracite Strip Mining and Conservation Act (Strip Mining Act) Act of June 27, 1947, P.L. 1095, *as amended,* 52 P.S. §§ 681.1–681.22. By the Act of November 30, 1971, P.L. 554, the Open Pit Mining Act was amended resulting in the repeal of the Strip Mining Act insofar as it was inconsistent with the Open Pit Mining Act. The 1971 amendments also added several provisions which resulted in the renaming of the Open Pit Mining Act to the Surface Mining Conservation and Reclamation Act (SMCRA). By the Act of October 10, 1980, P.L. 835, the legislature amended, *inter alia,* SMCRA in order to comply with federal surface mining requirements. This amendment redefined "surface mining" to include "reclamation," an important issue in this opinion. In addition, on July 31, 1982, Chapters 86 through 90 of the Pennsylvania Code, 25 Pa.Code § 86.1–90.168, which pertain to SMCRA and mining activities, became effective and these regulations likewise provide legal norms considered in this case.

made aware of the forfeiture by letters from DER dated March 13, 1988.

Section 86.172 of the regulations dealing with the release of bonds, 25 Pa.Code § 86.172(d), pertinently provides:

(1) Reclamation Stage I shall be deemed to have been completed when the permittee completes backfilling, regrading and drainage control in accordance with the approved reclamation plan.

(2) Reclamation Stage II shall be deemed to have been completed when:

(i) Topsoil has been replaced and revegetation has been established in accordance with the approved reclamation plan and the standards for the success of revegetation are met.

. . . .

(3) Reclamation Stage III shall be deemed to have been completed when:

(i) The permittee has successfully completed mining and reclamation operations in accordance with the approved reclamation plan, such that the land is capable of supporting any postmining land use approved pursuant to § 87.159 (relating to postmining land use), § 88.133 (relating to postmining land use), § 89.88 (relating to postmining land use) and § 90.166 (relating to postdisposal land use).

(ii) The permittee has achieved compliance with the requirements of the law, the regulations adopted thereunder, and the conditions of the permits.

(iii) The applicable liability period under § 86.151 (relating to period of liability) has expired.

It is not necessary for purposes of this appeal to reiterate all of the extensive site-specific facts concerning reclamation which were adequately addressed by EHB. It should be noted, however, that the parties stipulated to the existence and accuracy of each of the mining permits, acreage involved, bond liability, bond documents, and bond amounts.

In addition, Petitioner stipulated that many of the areas had indeed not been reclaimed.

Petitioner's defense as to his failure to reclaim those admittedly unreclaimed areas brings us to the first issue. Petitioner alleges that certain DER agents demanded bribes and that his refusal to pay these bribes led to discriminatory enforcement against him causing his insolvency. Martin further claims that his insolvency prevented him from performing reclamation. EHB ruled on this issue prior to hearing in an order Sur Motion to Limit Issues; Petitioner was thus precluded from presenting evidence on either bribery or insolvency. This order was made a part of EHB's adjudication. We agree with the judgment of EHB that Martin's allegations are criminal in nature and should not be a proper part of this bond forfeiture action which is judged only on the merit of the environmental issues. Other avenues were, and are, available to Petitioner for relief with respect to these allegations. We further agree that insolvency is not a defense to a forfeiture action but in fact can be a *reason* for forfeiture under 25 Pa.Code § 86.181(a)(6) which provides:

(a) The department will forfeit the bonds for a permit when it determines that:

.    .    .    .    .

(6) The permittee has become insolvent....

The next issue is whether DER's forfeiture action for permits 419–7, 419–13(A) and 419–14, was timely. As to the timeliness issue, Petitioner claims that EHB improperly interpreted the language of the bond agreements, which limits liability on the bonds to a period of five years after the completion of surface mining. Petitioner argues that the term "surface mining" includes only the period of time when coal is being extracted from the earth and not the period of time when the surface of the earth is being reclaimed. This theory and definition of surface mining in the context of the bond liability language is clearly erroneous. The issue was addressed by this Court in *American*

*Casualty Company of Reading, Pa. v. Department of Environmental Resources,* 65 Pa. Commonwealth Ct. 223, 441 A.2d 1383 (1982). Although *American Casualty* was interpreting the Act of June 27, 1947, P.L. 1095, *as amended,* (Strip Mining Act),[2] the distinction between the two acts is not relevant for our purposes here. What is important is the similarity in the type of bonds involved and in the language of the bonds involved in *American Casualty* and here. The bond form in *American Casualty* stated, in pertinent part:

NOW THE CONDITION OF THIS OBLIGATION IS SUCH THAT IF THE ABOVE bound operator or principal shall faithfully perform all of the requirements of the Act of Assembly, approved June 27, 1947, P.L. 1095, as amended, known as the 'Anthracite Strip Mining and Conservation Act,' then this obligation shall be null and void, otherwise to be and remain in full force and effect in accordance with the provisions of said Act of Assembly and Amendments thereto.

The Bond form in *American Casualty* also provided that liability on the bonds would continue for the duration of mining at the operation registered thereunder and for five years thereafter unless earlier released.

The bond, in the case before us now, states in like part:

NOW THE CONDITION OF THIS OBLIGATION is such that if the said surface mine operator shall faithfully perform all of the requirements of (1) *Act 418,*[3] (2) the Act of Assembly approved June 22, 1937, as amended,

2. See *supra* note 1.

3. The bond form identifies Act 418 by stating earlier, in clause (b) of the form, "provisions of the Act of Assembly, approved May 31, 1945, P.L. 1198, *as amended,* known as the 'Surface Mining Conservation and Reclamation Act' (hereafter Act 418)...."

Petitioner attempts to argue that the bonding provisions and the term "surface mining" should be construed under the statute as it existed when the bonds were entered into. At that time "surface mining" as defined did not include reclamation. We reject this argument because the bonds call for compliance with SMCRA (hereinafter Act 418). It is thus clear that the bonds are incorporated in the *current version* of SMCRA which has clarified the definition of surface mining to include reclamation. See *supra* note 1.

known as 'The Clean Streams Law' (Act 394), (3) the applicable rules and regulations promulgated thereunder, and (4) the provisions and conditions of the permits issued thereunder and designated in this bond (all of which are hereafter referred to as 'law'), then this obligation shall be null and void, otherwise to be and remain in full force and effect in accordance with the provisions of the law. (Emphasis added.)

LIABILITY UPON THIS BOND ... shall continue thereon for the duration of surface mining at the operation conducted hereunder and for a period of five (5) years thereafter unless released in whole or in part prior thereto as provided by the law.

*American Casualty* teaches that when the bonds are statutory in nature, as in the case before us, they must be construed in light of the statute creating the obligation served, keeping in mind the statute's purpose. The *American Casualty* Court, quoting 12 Am.Jur.2nd *Bonds* § 26 (1964), wrote:

While a bond is none the less [sic] a contract because it is required by statute, statutory bonds are construed in the light of the statute creating the obligation secured and the purposes for which the bond is required, as expressed in the statute. It is a generally accepted principle that the statute which provides for the giving of a bond becomes a part of the bond and imports into the bond any conditions prescribed by the statute but not in fact included in the bond as written. If the statute prescribes the conditions of bond, they will be read into the bond to determine liability thereunder although the bond does not include all of them. It is presumed that the intention of the parties was to execute such a bond as the law required. This rule is frequently applied in cases where the principal on the bond applies for and receives the contract, privilege, or benefit authorized by the statute on the condition expressed in the statute that the principal execute a bond in the terms provided by the statute. (Footnotes omitted.)

*American Casualty,* 65 Pa. Commonwealth Ct. at 230–31, 441 A.2d at 1387. Thus, in determining whether DER's bond forfeiture action was timely, the Court looked to the Anthracite Strip Mining and Conservation Act (Strip Mining Act), which, as does SMCRA here, *requires reclamation.*

Applying the principles of *American Casualty,* we note that Section 4(a)(2) of SMCRA, 52 P.S. § 1396.4(a)(2), requires a reclamation plan and when the Petitioner requested the return of his bonds he was required to file a report attesting to the completion of reclamation. 52 P.S. § 1396.4(g); 25 Pa.Code § 86.171. Because completion of reclamation and a report attesting to such completion are required by the statute and regulation upon which the bonds were conditioned, reclamation is a part of the term "surface mining" in the context of liability, and, therefore it is the filing of the completion report which triggers the five-year period of liability after which forfeiture of the bonds would be untimely. *Accord American Casualty.* Therefore, the forfeiture action by DER in this case was timely.

Petitioner next raises questions concerning EHB's findings of fact 125 through 130. First, whether these findings are supported by substantial evidence and second whether EHB applied the correct law to these facts.

Findings of Fact 125 through 130 are as follows:

125. Rills and gullies greater than 9 inches deep exist on the northern portion of MP 419–14.

126. Martin cleared brush on the northern portion of MP 419–14 and explored for coal by drilling, but found no coal.

127. Under the DER approved upgrade to MDP–12, Martin was to install diversion and collection ditches and sediment pond "G".

128. Martin stipulated that he did not install the upgrade controls.

129. The only portion of MP 419–14 that Martin did not affect was a one acre area on the northern portion.

130. Bond liability on MP 419–14 is $9,000.

■ EHB found the evidence to support these findings in testimony by a DER inspector, Mr. Davis, (N.T. at 22, 64, 154), who inspected the sites, as well as in Petitioner's own stipulation. EHB found Mr. Davis' testimony to be credible and it is not within the purview of this Court to act as fact finder or to judge the credibility of witnesses. Therefore, we will not disturb the findings of EHB which are based on substantial evidence.

■ Petitioner next presents a legal argument regarding these same findings, positing a theory that the violations found on mining permit area 419–14 having to do with unreclaimed land surface, and the violations having to do with erosion and sedimentation controls would not have been violations under the version of SMCRA in effect at the time Petitioner was granted his mining permits. As stated earlier, however, Petitioner is responsible for all environmental controls as they are added and clarified by amendments to SMCRA, and by regulations thereunder. Moreover, Petitioner signed consent orders on July 19, 1982 and October 18, 1983, promising to rectify problems, and those agreements incorporated the latest version of SMCRA into those orders.

For the reasons set forth above, we affirm the order of the EHB.

## ORDER

NOW, February 8, 1990, the order of the Environmental Hearing Board in the above-captioned matter is hereby affirmed.